DRAKE, J.
LThe State of Louisiana, Department of Children and Family Services (DCFS), appeals the judgment of the juvenile court,[1] which dismissed the DCFS’s petition to terminate the parental rights of the father (J.S.) as to a minor child adjudicated in need of care (J.J.S.).[2] For the reasons that follow, we reverse the judgment of the juvenile court.

FACTS AND PROCEDURAL HISTORY

J.S. is the father of J.J.S., a son who was born on August 8, 2008. On August 12, 2008, DCFS[3] learned that J.J.S. was born prematurely and tested positive for amphetamines and marijuana. On October 29, 2008, the juvenile court granted an oral instanter order directing DCFS to take J.J.S. into its immediate custody based on allegations of neglect and dependency. A verified complaint that contained the information that was previously orally relayed to the court for the issuance of the oral instanter order was filed with the court the same day. J.S. was considered a non-offending parent in those proceedings. DCFS had a previous working history with *321 the minor child’s mother, B.V. In August 2007, DCFS opened a family services case whereby the agency paid numerous bills for the family, including rent, water, and electric.-
On November 6, 2008, a custody hearing was held, after which custody of J.J.S. was returned to his mother, B.V., with three months of protective supervision by DCFS. J.S. was present at the hearing, agreed with the transfer of custody to |3B.V., and agreed to provide some financial assistance. DCFS continued to supervise the case. The protective supervision period was extended through July 30, 2009, subject to B.V. enrolling in a substance abuse treatment facility program. The court also recommended that DCFS provide J.S. substance abuse counseling. At the July 30, 2009 hearing, the juvenile court reinstated the October 29, 2008 verified complaint and placed J.J.S. back in the custody of DCFS.
Thereafter, pursuant to the stipulation of B.V. and based on evidence contained in the verified complaint, the juvenile court ordered the assistant district attorney (ADA) assigned to the case to file a petition to initiate proceedings to adjudicate J.J.S. as a child in need of care. At an appearance hearing, J.S. and B.V. both denied the allegations of the petition, and the matter was set for an adjudication hearing. At the adjudication hearing held on October 19, 2009, B.V. stipulated that J.J.S. ,be adjudicated a child in need of care, and the juvenile court rendered judgment adjudicating J.J.S. as a child in need of care as it related to B.V. The adjudication in relation to J.S. was continued until December 10, 2009, at which time the assigned ADA sought leave to amend the child in need of care petition. Over the objection of J.S., the juvenile court granted the ADA’s motion to amend the original petition to add specific factual allegations of neglect committed by J.S. The matter was then set for an appearance and an adjudication hearing relative to J.S. At the appearance hearing, J.S. again denied the allegations of the petition.
At the adjudication hearing on January 12, 2010, the parties entered into ah Informal Adjustment Agreement (IAA). The IAA provided as follows: (1) J.S. was to comply with the December 28, 2009 case plan; (2) J.S. would cooperate and comply with DCFS in allowing sibling visits; (3) DCFS would provide daycare services for three months; (4) J.S. would continue to work with Capital Area for substance abuse treatment and the , Infant Child & Family Center; (5) J.S. would ^submit to random drug screens; (6) DCFS would assist J.S. in obtaining childcare assistance through- the Office of Family Support; (7) CASA would provide supervision for the duration of the IAA; and (8) DCFS would continue to provide protective supervision for the duration of the IAÁ. The IAA was effective for six months. That same day, custody of J.J.S. was transferred to J.S. A hearing to review compliance with the IAA was held on April 22, 2010. The trial court extended the IAA for another six months and ordered J.S. to submit to a drug screen every other week.
The IAA was not successfully completed by J.S. On March 10, 2011, the court terminated the IAA and returned J.J.S. to the custody of DCFS over the department’s objection. Although J.J.S. 'was returned to DCFS custody, he remained placed in the home of J.S. From March 10-23, 2011, however, the whereabouts of J.S. and J.J.S. were unknown. A meeting between DCFS and J.S. was scheduled for March 18, but J.S. did not attend. Once J.J.S. was located, he was placed in the home of his former foster parent, Tameka Judson. On April 18, 2011, J.J.S. was adjudicated a child in need of care as it *322 related to J.S. and has remained in DCFS custody ever since.
On May 18, 2013, DCFS filed a petition for termination of parental rights and certification for adoption, seeking to terminate the parental rights of B.V. and J.S. pursuant to La. Ch.C. art. 1015(4)(b), (4)(c), and (5). Specifically, DCFS averred in the petition that B.V. and J.S. failed to make significant contributions towards the care and support of J.J.S. for a period of six consecutive months, failed to maintain significant contact with their son for six consecutive months, and failed to demonstrate significant measurable progress toward case goal plans. The termination of parental rights (TPR) trial, originally1 set for August 28, 2013, was continued without date following J.S.’s release from jail be1 cause he made efforts toward working his case plan. J.S. began visiting his son regularly, passing |Brandom drug'screens, and cooperating with DCFS. Following a weekend visit on October 11-12, 2013, however, J.S. had no further contact with J.J.S. for ten months, apart from one visit on February 9, 2014. DCFS filed a supplemental petition for termination of parental rights and certification for adoption on May 9, 2014.
Following trial in this matter, the trial court terminated the parental rights of B.V. in a judgment signed September 4, 2014. As .to J.S., the trial court found that DCFS had failed to carry its burden of establishing the grounds for. termination under La. Ch.C. art. 1015(4)(b), (4)(c), or (5) by clear and convincing evidence, and further, that the termination of the parental rights of J.S. was not in the best interest of the child. Accordingly, in a second judgment signed September 4, 2014, the trial court dismissed the petition for termination of parental rights and certification for adoption as to J.S.
From this second judgment DCFS has appealed, contending that (1) the trial court committed manifest error in concluding that DCFS failed to meet its burden of proof necessary to terminate the parental rights of J.S. pursuant to La. Ch.C. art. 1015(4)(b), (4)(c), or (5), by clear and convincing evidence; and (2) the trial court committed manifest error in concluding that the termination of the parental rights of J.S. was not in the best interest of J. J.S.

LAW AND DISCUSSION

Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children, warranting great deference and vigilant protection under the law, and due process requires that a fundamentally fail' procedure be followed when the State seeks to terminate the parent-child legal relationship. State ex rel. J.A., 99-2905 (La.1/12/00), 752 So.2d 806, 810; State, ex rel. 09-2061 (La.App. 1 Cir. 3/26/10), 36 So.3d 317, 320, writ denied, 10-0957 (La.5/5/10), 34 So.3d 851; State ex rel B.J., 00-1434 (La.App. 1 Cir. 7/27/00), 767 So.2d 869, 872. However, a child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term and continuous relationships found in a home with proper parental care. State ex rel. J.A., 752 So.2d at 810-11. In balancing these interests, the courts of this state have consistently found the interest of'the child to be paramount over that of the'parent. Id. at 811.
. Louisiana Children’s Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of a parent. The State need only establish one ground, but the trial court must also find that the termination is in the best interest of the *323 child. La. Ch.C. art. 1037 B; State, ex rel. B.E.M., 36 So.3d at 319. Additionally, the State must prove the elements of one of the enumerated grounds of La. Ch.C. art. 1015 by clear and convincing evidence to sever the parental bond. La. Ch.C. art. 1035. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. State ex rel. B.J., 767 So.2d at 872. Accordingly, a two-pronged inquiry is posed in parental termination proceedings: (1) has the State established by clear and convincing evidence at least one ground for termination under La. Ch.C. art. 1015, and, if so, (2) is the termination in the best interest of the child? State ex rel. L.B. v. G.B.B., 02-1715 (La.12/4/02), 831 So.2d 918, 922.
It is well settled that an appellate court cannot set, aside a juvenile court’s findings of fact in the absence of manifest error or unless those findings are clearly wrong. State ex rel. B.J., 767 So.2d at 872.
In the instant case, DCFS relied upon La. Ch.C. art. 1015(4)(b), 1015(4)(c); and 1015(5) as the grounds for which it sought termination of ■ J.S.’s parental rights. Pursuant to' La.' Ch.C. art. 1015(4)(b), parental rights may be terminated when:
|7As of the time the petition is filed, the parent has failed to provide significant contributions to the child’s care and support for any period of six consecutive months.
Louisiana Children’s Code article 1015(4)(c) provides that parental rights may be terminated when:
As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
Finally, pursuant, to La.. Ch.C. art. 1015(5), parental rights may be terminated when:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no. substantial parental compliance with a case plan for services which has been previously filed by the department and approved by'the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
The first ground for termination that DCFS alleged was pursuant to La. Ch.C. art. 1015(4)(b), the failure to provide significant. contributions to the child’s care and,support for any period of six consecutive months. In ruling that DCFS failed to prove this ground for termination of J.S,’s parental rights by clear and convincing evidence, the trial court reasoned that after reviewing the record and testimony, it appeared that J.S. had fallen on “some hard Jipies,” whether by being laid off from work or lack of transportation. The trial court further stated that “there’s been" substantial parental compliance” based on the testimony presented at trial. Apart' from those statements, the trial court made no statements at trial or in its written reasons regarding J.S.’s failure to provide any significant contributions for the care of J.J.S.
After reviewing the record herein in its entirety, we find that the trial court manifestly erred in its finding that under the facts established by DCFS herein, DCFS failed to prove by clear and convincing evidence that J.S.’s parental rights |sshould have been terminated pursuant to La. Ch.C. art. 1015(4)(b). The State is only *324 required to prove a ground for termination listed in La. Ch.C. art. 1015 by clear and convincing evidence as required under La. Ch.C. art. 1035, and that termination is in the best interest of the child, pursuant to La. Ch.C. art. 1037 B. Based on our review of the record, DCFS met its burden.
At the time the State filed the supplemental petition for termination of parental rights, J.S.’s case plan directed him to provide proof of his income to J.J.S.’s foster care Worker. The case plan also directed J.S. to make a parental contribution of $87.00 per month until a. time that DCFS would review his financial information in order to assess child support.[4] At trial, the foster care worker Jeanette Dent testified that DCFS collected no money from J.S. on behalf of his son during the entirety of J.J.S.’s time in foster care. Additionally, DCFS offered a print-out of J.S.’s parental contributions collected to date, which showed that no money was collected by the State from J.S. on behalf of his son during the last six years J.J.S. was in foster care. No party submitted any evidence to contradict the assertions of DCFS regarding this ground for‘termination of parental rights.
Considering the foregoing and the record as a whole, we conclude that the trial court manifestly erred in concluding that the evidence presented by DCFS failed to establish by clear and convincing evidence that J.S. failed to provide significant contributions for JJ.S.’s care and support for any period. Instead, on review, we find that DCFS overwhelmingly established this ground for termination of J.J.S.’s parental rights by clear and convincing evidence.
^Because we reverse the trial court’s finding that DCFS failed to prove by clear and convincing evidence that J.S.’s parental rights should have been terminated pursuant to La. Ch.C. art. 1015(4)(b), we pretermit consideration of whether it committed manifest error in its additional determination that DCFS failed to prove by clear and convincing evidence that J.S.’s parental rights should have been terminated pursuant to La. Ch.C. art. 1015(4)(c) or La. Ch.C. art. 1015(5). As stated herein, the State need only prove one of the grounds for termination set forth by La. Ch.C. art. 1015, by clear and convincing evidence. See State ex rel. B.J., 767 So.2d at 873.
In the instant matter, given its finding that DCFS failed to prove the existence of one of the grounds for termination set forth in La. Ch.C. art. 1015, the trial court did not consider the second prong of the inquiry herein, ie., whether termination of J.S.’s parental rights is in the child’s best interest. Apart from stating, “... the State’s supplemental petition to terminate parental rights of [J.S.] was premature and the Court concludes that it is not in the best interest of the child, J.J.S., to terminate the parental rights of his father,” the trial court made no further statements that the termination of J.S.’s parental rights was not in J.J.S.’s best interest. See State ex rel. L.B. v. G.B.B., 831 So.2d at 922. Based upon our review of the record, we conclude that the evidence overwhelmingly supports a conclusion that termination of parental rights is *325 in J.J.S.’s best interest herein. Foster care worker, Jeanette Dent, opined that the child needs to have a permanent placement in a family and recommended that the child should be freed for adoption. Since October 29, 2008, J.J.S. has been in and out of foster care, but he has consistently resided in foster care since April 18, 2011. DCFS initially placed J.J.S. with foster parent Tameka Judson and later placed J.J.S. with Ms. Judson’s sister, Nita Davis. In his current foster care placement, J.J.S. can maintain frequent and regular contact with Ms. Judson and his sibling that was adopted by her (the | mresult of a separate termination). Ms. Judson and Ms. Davis are the only consistent caregivers J.J.S. has known. His current foster parent, Ms. Davis, is willing to adopt J.J.S. and provide permanency for him, should he be freed for adoption.
Thus, considering the foregoing and the record as a whole, we conclude that the trial court’s judgment dismissing DCFS’s petition for termination of J.S.’s parental rights must be reversed.

DECREE

For the above and foregoing reasons, the trial court’s September 4, 2014 judgment dismissing DCFS’s petition for termination of J.S.’s parental rights and certification for adoption is reversed. Judgment is hereby rendered terminating J.S.’s parental rights as to J.J.S. and decreeing that J.J.S. is now free for adoption. This matter is remanded to the juvenile court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed against J.S.
REVERSED, RENDERED, AND REMANDED.
GUIDRY, J., dissents and assigns reasons.

.The Juvenile Court for the Parish of East Baton Rouge exercises original juvenile jurisdiction for the Parish of East Baton Rouge. See La. Ch.C. art. 302(1); La. R.S. 13:1621(A). As a court exercising juvenile jurisdiction, it has exclusive original jurisdiction, in conformity with any special rules prescribed by law, over any child alleged to be in need of care and the parents of any such child. La. Ch.C. art. 604.

. The children and their parents are referred to by their initials to preserve their anonymity in this confidential proceeding. Uniform Rules-Courts of Appeal, Rule 5-2.

. In the written order issued by the juvenile court pursuant to the filing of the verified complaint, the court ordered J.J.S. placed in the custody of the Department of Social Services, which was renamed the Department of Children and Family Services in 2010. See 2010 La. Acts, No. 877, § 3.

. All of the case plans made a part of the record in this matter directed J.S. to provide proof of income to JJ.S.’s foster care worker in order for DCFS to review his financial information so that he could be assessed child support. Beginning in 2012, J.S.’s case plans directed him to not only provide proof of income, but to also make a $87,00 parental contribution, per month, toward the care of J.J.S. Case manager Iris Mills testified that in 2011, J.S. did provide proof of income in accordance with the 9/14/11 case plan.