NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2020 CJ 0858

STATE OF LOUISIANA

IN THE INTEREST OF S.B.

Judgment Rendered: FEB 1 9 2021

********

Appealed from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Suit No. 10080

The Honorable Scott C. Gardner, Judge Presiding

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

| | |
|---|---|
| Betsy Smith<br>Child Advocacy Program<br>Mandeville, Louisiana | Counsel for Plaintiff/Appellee<br>S. B. |
| D. Bruce Cannon<br>Slidell, Louisiana | Counsel for Defendant/Intervenor<br>Janet Bray Lusk |
| Sandra B. Terrell<br>Covington, Louisiana | Counsel for Louisiana Department<br>of Child and Family Services |
| Karla M. Baker<br>Frank J. Larre<br>Metairie, Louisiana | Counsel for Defendant/Appellant<br>Brandi Lynn Bray Bergeron |
| Nicholas Hite<br>New Orleans, Louisiana | Counsel for Defendants/Appellees<br>Brandon Dauzat<br>Blake Bergeron |
| Whitney Germany<br>Assistant District Attorney | Counsel for Plaintiff/Appellee<br>State of Louisiana |

Covington, Louisiana

********

**BEFORE: GUIDRY, McCLENDON, AND LANIER, JJ.**

Guidry, J., concur.

McClendon, J., concur by [signature]

Guidry, J., concur.

McClendon, J., concur

**LANIER, J.**

In this Child in Need of Care (CINC) case, plaintiff/appellant Brandi Lynn Bray Bergeron, mother of the minor child S.B.[1], appeals the judgment of the Twenty-second Judicial District Court, which terminated the parental rights of all the parents. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 25, 2018, the Department of Children and Family Services (DCFS) received a report of alleged neglect, which stated S.B., who was born August 22, 2018, had not received any vaccinations since being born. It is also alleged that the child cried excessively, stopped breathing on occasion, and was difficult to console. The report further stated that Ms. Bergeron had refused to take S.B. to the hospital since she did not have medical insurance. On October 24, 2018, EMS had to be called due to S.B.'s going limp due to shallow breathing. S.B. was sent to Ochsner's main campus in New Orleans for further treatment. S.B. was diagnosed with subarachnoid and bilateral hemorrhages, which the medical professionals found concerning for non-accidental trauma. At Ochsner's, S.B. continued to be difficult to console and experienced abnormal breathing.

The parents claimed that the child did not fall and was not injured in their care but could not explain the cause of S.B.'s hemorrhages, other than the injuries could have happened while S.B. was in day care.

Brandon Dauzat, the biological father of S.B., admitted to DCFS that he had a criminal history, which included charges of domestic violence and child abduction from a previous relationship, possession of a firearm, burglary, and other charges he could not remember. He had also spent five years in drug court. Ms. Bergeron had a pending drug possession charge at the time of S.B.'s injury.

---

[1] The child will be referred to by her initials to maintain confidentiality. Uniform Rules—Courts of Appeal, Rule 5-2.

3

S.B.'s medical treatment confirmed that her injuries were non-accidental and that she had brain swelling and dysfunction due to bleeding. Ms. Bergeron claimed that S.B. had been born with cysts in her brain, but the doctors who treated S.B. suspected the cysts were residual blood. DCFS interviewed S.B.'s babysitter, who stated that each time she had a concern about S.B.'s well-being, she immediately contacted the parents about those concerns. The St. Tammany Parish Sheriff's Office opened an investigation into the matter.

Because of their findings, DCFS contacted the trial court and was granted a verbal order to place S.B. in the State's custody on October 29, 2018. S.B. was placed in foster care in Slidell, in close proximity to where S.B.'s parents lived.

DCFS filed a petition for termination of parental rights and certification for adoption on January 8, 2020. The petition named Ms. Bergeron as the mother of S.B., Mr. Dauzat as the biological father, and Blake Bergeron as the named father on S.B.'s birth certificate. The petition further alleged that neither the legal father nor the biological father have made any contributions, communication, or effort to support S.B. for six months since her removal on October 29, 2018 to the State's custody. DCFS alleged that both fathers had been completely non-compliant with their case plans. As to Ms. Bergeron, DCFS alleged that she had not substantially complied with her case plan in that she had not provided a safe and stable home by continuing to reside with Mr. Dauzat, who has a history of domestic violence. DCFS further alleged that Ms. Bergeron had not proven her own financial stability, had not complied with mental health or anger management evaluations, had failed to participate in required parenting classes, continued to test positive for illegal substances such as heroin, and had not completed court-ordered substance abuse treatment.

After a trial conducted on February 26, 2020, the trial court terminated the rights of all the parents, continued custody of S.B. with DCFS, and granted Ms.

Bergeron monthly visitation with S.B., excluding Ms. Bergeron's family members and third parties. It is from this judgment that Ms. Bergeron appeals.[2]

## ASSIGNMENTS OF ERROR

Ms. Bergeron cites two assignments of error:

1. The trial court erred in changing the case plan to adoption and in involuntarily terminating Ms. Bergeron's parental rights.

2. The trial court erred in not allowing S.B. to be placed with her maternal grandmother.

## STANDARD OF REVIEW

An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. *State ex rel. K.G.*, 2002-2886, 2002-2892 (La. 3/18/03), 841 So.2d 759, 762. Title X of the Children's Code governs the involuntary termination of parental rights. Louisiana Children's Code article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground, but the trial court must also find that the termination is in the best interest of the child. La. Ch.C. art 1039. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. La. Ch.C. art. 1035(A).

---

[2] The trial court's judgment of termination of parental rights and certification for adoption was signed March 3, 2020. Notice of the judgment was issued to all parties on March 6, 2020. No motion for new trial was filed. Ms. Bergeron filed a notice of appeal on March 27, 2020.

Consistent with the statutory scheme of expediency, the Louisiana Children's Code provides that appeals shall be taken within fifteen days from the signing of the judgment or from the mailing of notice of judgment when required. La. Ch.C. art. 332. The courts of appeal have consistently held that an appeal not timely filed in juvenile matters shall be dismissed. *State ex rel. C.P.*, 2000-2703 (La. 1/17/01), 777 So.2d 470, 471.

Based on the date of the issuance of the notice of judgment, the delay to file an appeal in this matter would have run on March 23, 2020, since March 21, 2020 fell on a weekend. Ms. Bergeron filed her notice of appeal on March 27, 2020. The appeal, therefore, is untimely on its face. However, according to Executive Department Proclamation Number JBE 2020-30, issued by the Governor of Louisiana on March 16, 2020, all "[l]egal deadlines, including liberative prescription and peremptive periods applicable to legal proceedings in all courts," which included deadlines set forth in the Louisiana Children's Code, were suspended at that time until April 13, 2020, in response the COVID-19 epidemic. As such, this appeal shall be treated as timely and shall be maintained.

5

## DISCUSSION

At the trial, the State introduced into evidence medical records of S.B. from three different hospitals where she was examined for her injuries. S.B. was admitted to Ocshner Medical Center in New Orleans on October 24, 2018. She was diagnosed with brain cysts, as well as an intracranial hemorrhage. At S.B.'s examination at Ochsner Health Center North Shore on November 9, 2018, she was diagnosed with suspected maltreatment, retinal hemorrhaging of both eyes, intracranial hemorrhage, an abnormal electroencephalogram, macrocehpaly, and a large fontanelle.

An MRI was taken on November 30, 2018, which revealed the impression of multiple bilateral subdural hematomas. An examination at Children's Hospital, which occurred on December 12, 2018, diagnosed S.B. with increased head circumference and recommended intracranial imaging. Her subdural hematomas and retinal hemorrhages in both eyes from at least two different incidents were noted as "highly concerning for child physical abuse." Concern for nutritional neglect was also noted.

Ms. Bergeron's case plan with DCFS required her to maintain stable and legal income, remain drug free and sober, and maintain good mental health. However, Ms. Bergeron did not complete any of the actions required by DCFS. Additionally, with respect to improving and demonstrating adequate parenting skills, Ms. Bergeron did not complete any of the actions required by DCFS. She tested positive for methamphetamines on two random drug screens, was either absent or late to S.B.'s medical appointments, and had not contributed towards the care for S.B. On September 18, 2018, DCFS noted that Ms. Bergeron had made some progress in completing some of her required programs but not all of them.

In the trial court's written reasons for termination, it cited the above evidentiary findings, noting that Ms. Bergeron did not begin to substantially

6

progress on her case plan until the case plan goal was changed to adoption. The trial court cited La. Ch.C. art. 1015(6) as the basis for termination, which is failing to substantially comply with the case plan for a year from when S.B. was removed from Ms. Bergeron's custody. According to the trial court, a hearing on the State's petition for termination of parental rights was conducted four months after the running of the one-year time period.

We find the record reasonably supports the conclusion that the State presented clear and convincing evidence of grounds for termination. We therefore find the trial court was not manifestly erroneous in terminating Ms. Bergeron's parental rights and certifying S.B. for adoption.

Ms. Bergeron also assigns as error the trial court's decision not to place S.B. with her maternal grandmother, Janet Bray Lusk. Ms. Lusk filed a petition of intervention on December 28, 2018, in which she alleged that DCFS gave no consideration to her as a potential relative placement for S.B. Ms. Lusk is not a party to the judgment on appeal, and she has not appealed the instant case. Ms. Bergeron is questioning the trial court's decision to maintain S.B.'s placement with the foster parents who have been approved by DCFS and the trial court.

At a special review hearing requested by Ms. Lusk and held on August 21, 2019, Heather Scallon, the DCFS case manager who had managed S.B.'s case since her removal from Ms. Bergeron's custody, recommended to the court that S.B. remain in her certified foster home due to Ms. Lusk's lack of honesty concerning Ms. Bergeron's living conditions. Ms. Scallon suspected that Ms. Bergeron was living with Mr. Dauzat, since her vehicle was found at his home on two occasions. When Ms. Scallon confronted Ms. Bergeron about where she had been living, Ms. Bergeron stated she was living with some friends, while Ms. Lusk contended Ms. Bergeron was living with her. Mr. Dauzat also testified in family preservation court that Ms. Bergeron had been living with Ms. Lusk. Ms. Scallon

7

testified that at the time S.B. was taken to the hospital for her injuries, Ms. Lusk became hostile with the neurologist concerning S.B.'s diagnosis of an abuse-related injury. This raised a concern with Ms. Scallon that since Ms. Lusk did not believe the diagnosis, she would not provide sufficient care to S.B. For these reasons, Ms. Scallon did not believe that Ms. Lusk would be a proper placement for S.B., as the mother and possibly the fathers would have access to her under Ms. Lusk's care without proper DCFS supervision.

Louisiana Children's Code article 1037(D) requires a judgment of termination to grant custody of the child to DCFS, an adult relative of the child, or any other suitable person, in accordance with the best interest of the child. At the time the judgment was signed, S.B. was sixteen months old and had lived with her foster parents for fourteen of those sixteen months. The medical records from Children's Hospital noted, on November 12, 2018, that S.B. had gained weight under foster care. DCFS noted that the foster parents were seeing to S.B.'s medical needs, including surgery. The foster parents also gave regular updates of S.B.'s condition to Ms. Bergeron.

From our review of the record, we find that the trial court was not manifestly erroneous in maintaining S.B.'s placement with the foster parents. Although still an infant, S.B. has lived with her foster parents in a safe, stable environment for most of her life. The foster parents have displayed the capability and the willingness to provide care, love, and stability for her. In contrast, Ms. Lusk presented a risk that the biological parents who allegedly abused S.B. would have continued unsupervised access to the child. In the judgment of termination, the trial court granted monthly visitation to Ms. Bergeron but excluded family members and third parties from attending the visitation. Therefore, it is clear that the trial court did not find placement with Ms. Lusk to be in S.B.'s best interest, and we can find no reason in the record to reverse the trial court's decision. See

8

*Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989); <u>see also</u> *State In Interest of J.J.S.*, 2014-1574 (La. App. 1 Cir. 7/7/15), 180 So.3d 319, 324-25.

## DECREE

The judgment of the Twenty-second Judicial District Court, which terminated the parental rights of the plaintiff/appellant, Brandi Lynn Bray Bergeron, and certified the minor child, S.B., for adoption, is affirmed. All costs of this appeal are assessed to Ms. Bergeron.

**AFFIRMED.**