# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 16-273


**STATE OF LOUISIANA**

**IN THE INTEREST OF B.R.C.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC-2014-210
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John E. Conery, Judges.


**AFFIRMED.**


**Lloyd Dangerfield
703 E. University Avenue
Lafayette, LA 70503
Telephone: (337) 232-7041
COUNSEL FOR:**
    **Defendant/Appellant - J.W. (Father)**


**Keith A. Stutes
Lafayette Parish District Attorney
Tracey Davenport-McGraw
Lafayette Parish Assistant District Attorney
P. O. Box 3306
Lafayette, LA 70502-3306
Telephone: (337) 232-5170
COUNSEL FOR:**
    **Plaintiff/Appellee - State of Louisiana**

**Leah Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine Building 3, Room 150**
**Lafayette, LA 70508**
**Telephone: (337) 262-1555**
**COUNSEL FOR:**
    **Other Appellee - Department of Social Services**

**Diane Elaine Cote**
**825 Kaliste Saloom Road**
**Brandywine III, Room 150**
**Lafayette, LA 70508**
**Telephone: (337) 262-5913**
**COUNSEL FOR:**
    **Other Appellee - State of Louisiana, through the Department of**
    **Children & Family Services**

**Franchesca L. Hamilton-Acker**
**Kimberly Latigue Arvie**
**Acadiana Legal Services**
**P. O. Box 4823**
**Lafayette, LA 70502-4823**
**Telephone: (337) 237-4320**
**COUNSEL FOR:**
    **Other Appellee - B.R.C.**

**Laura Melancon**
**516 SE Court Circle**
**Crowley, LA 70526**
**Telephone: (337) 889-5669**
**COUNSEL FOR:**
    **Other Appellee - B.C.**

**THIBODEAUX, Chief Judge.**

J.W.,[1] the biological father of B.R.C., appeals the trial court's judgment terminating his parental rights. At the trial level, the State of Louisiana, through the Department of Children and Family Services ("DCFS"), contended that J.W. had not completed any component of his court-approved case plan, with the exception of attending parenting classes and scheduling a substance abuse evaluation as trial approached. J.W. claimed that his efforts were sufficient to maintain his parental relationship. The trial court determined that there was no reasonable expectation that J.W.'s conduct would significantly improve. Further, that it was in B.R.C.'s best interest to terminate J.W.'s parental rights. For the reasons that follow, we affirm.

I.

**ISSUES**

We shall consider:

1.  whether the trial court manifestly erred in terminating J.W.'s parental rights; and

2.  whether the trial court erred by refusing to hear testimony and consider evidence regarding B.R.C.'s paternal grandmother's interest in adopting him, if J.W.'s parental rights were terminated.

---

[1]Pursuant to Uniform Rules—Court of Appeal, Rule 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

## II.

## FACTS AND PROCEDURAL HISTORY

B.R.C. and his siblings came into the custody of DCFS because of their mother's substance abuse and lack of supervision. At the time, B.R.C.'s biological father, J.W., could not be located. B.R.C. and his siblings were adjudicated as children in need of care ten days later. He was placed in a foster home and currently resides in that home with his sister. A case plan was created for J.W. with an aim toward reunification with a concurrent goal of adoption.[2] After noncompliance with his case plan, DCFS sought to terminate J.W.'s parental rights pursuant to La.Ch.Code. arts. 1015(4) and 1015(5) so that B.R.C. can be freed for adoption.

A termination proceeding was held. Thereafter, the trial court cited La.Ch.Code. art. 1015(5) and determined that DCFS proved, by clear and convincing evidence, there was no reasonable expectation that J.W.'s conduct would improve significantly. Further, that termination of J.W.'s parental rights was in the best interest of B.R.C.[3] J.W. now appeals that ruling.

## III.

## STANDARD OF REVIEW

A trial court's findings on whether or not parental rights should be terminated are subject to the manifest error standard of review. *State ex rel. K.G.,* 02-2886 (La. 3/18/03), 841 So.2d 759. Pursuant to this standard, we may not set aside any factual findings of the trial court unless the findings are manifestly

---

[2]The original case plan was created on April 14, 2014. It was updated on December 29, 2014, and June 24, 2015, to note J.W.'s progress, or lack thereof, with each element of the case plan.

[3]The biological mother stipulated to her parental rights being terminated on November 16, 2015.

erroneous or, in other words, are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

IV.

**LAW AND DISCUSSION**

**A.    Whether the trial court manifestly erred in terminating J.W.'s parental rights.**

J.W. contends that DCFS failed to prove by clear and convincing evidence that there was no reasonable expectation for significant improvement in his condition or conduct.  J.W. admits that he did not complete his case plan prior to the termination hearing.  However, he states that he put forth effort to complete the plan.  He notes that he and his mother (the child's grandmother) established a relationship with the child prior to entering DCFS's custody.  He states that visiting the child was difficult because he lived more than 100 miles away.  Before the original November 16, 2015, trial date, he maintains that he:  (1) visited B.R.C. in Baton Rouge; (2) had his home inspected; (3) participated in a Family Team Conference; and (4) appeared at numerous court hearings which required him to travel from St. Charles Parish to Lafayette Parish for each appearance.  Further, after the trial was continued to December 14, 2015, he began parenting classes and scheduled a substance abuse evaluation.  Given the above efforts, J.W. argues that the trial court erred in finding that the DCFS proved, by clear and convincing evidence, that there is no reasonable expectation of significant improvement in his condition or conduct.

DCFS argues that the trial court did not err in terminating J.W.'s parental rights.  It avers that except for J.W.'s last-ditch effort to attend parenting classes, J.W. failed to comply substantially with his case plan.  It contends that it is

3

in B.R.C.'s best interest to terminate J.W.'s parental rights because: (1) there is no reasonable expectation that J.W.'s conduct or condition will improve; (2) it has an obligation to ensure that B.R.C. has safe and stable parental care; and (3) since July 2015, B.R.C. has been with foster parents, who have provided him a "stable, loving and secure home and proper parental care" and are willing to adopt him.

The Louisiana Supreme Court has held that in an involuntary termination proceeding, two private interests must be balanced—those of the parent and those of the child. *State in the Interest of J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806. "[P]arents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children[.]" *Id.* at 810 (citing *Lassiter v. Dept. of Social Services*, 452 U.S. 18 (1981)).

Further, "the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care." *Id.* at 810-11 (citing *Lehman v. Lycoming County Children's Serv.'s Agency*, 458 U.S. 502 (1982)).

In balancing these interests, the interest of the child is paramount. It must be considered over that of the parent. *Id.* at 806. The primary concern of a termination of parental rights proceeding is to secure the best interest of the child. La.Ch.Code art. 1001. "Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens." *State in the Interest of J.A.*, 752 So.2d at 811.

Louisiana Children's Code Article 1015 provides the statutory grounds by which a court may involuntarily terminate the rights of a parent. Only

4

one ground needs to be established, but the court must also find that termination is in the best interest of the child. *State in the Interest of ML*, 95-45 (La. 9/5/95), 660 So.2d 830. The trial court found that DCFS proved by clear and convincing evidence that termination of J.W.'s parental rights was warranted under La.Ch.Code art. 1015(5) *amended by* 2016 La. Acts No. 608, § 1. This article states that:

> Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; <u>and</u> despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

*Id.* (emphasis added). Louisiana Children's Code Article 1036(C) sets forth the evidence that may be used to prove a lack of parental compliance with a case plan. It states:

> Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
>
> > (1) The parent's failure to attend court-approved scheduled visitations with the child.
> >
> > (2) The parent's failure to communicate with the child.
> >
> > (3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
> >
> > (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to

5

do so by the court when approving the case plan.

> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

> (6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

> (7) The persistence of conditions that led to removal or similar potentially harmful conditions.

La.Ch.Code art. 1036(C).

Further, La.Ch.Code art. 1036(D) sets forth the evidence that may be used to prove a lack of reasonable expectation of significant improvement in the parent's conduct or condition. It states, in pertinent parts:

> (1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.

> . . .

> (3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

La.Ch.Code art 1036(D).

Here, it is undisputed that J.W. did not comply substantially with his case plan. J.W. concedes this fact. Instead, J.W. focuses his argument on whether the trial court determined properly that there was no reasonable expectation for significant improvement in his condition or conduct. On this issue, J.W. submits

6

that there is a lack of evidence because he: (1) made recent efforts to comply with his case plan; (2) made an effort to attend court hearings and be attentive of the status of the case; and (3) attempted to contact his first attorney but was unsuccessful which delayed his ability to comply with his case plan.

J.W. cites one case, *State ex rel. B.O.G.*, 08-1103 (La.App. 3 Cir. 3/4/09), 5 So.3d 1018, to support his argument. He uses this case for the proposition that not completing all components of a case plan does not warrant a termination of parental rights. In *B.O.G.*, this court reversed the judgment of the trial court which terminated the parental rights of K.J.G. *Id.* K.J.G.'s case plan mandated that he provide child support payments of $50.00 per month, per child; maintain stable and safe housing; visit the children in accordance with the visitation plan; participate in a psychological evaluation; and complete domestic violence, anger management, and parenting skills classes. *Id.*

On appeal, this court noted that K.J.G. made significant strides towards completion of his case plan. *Id.* Despite living in Texas, he would travel to Lafayette, Louisiana to visit his children. *Id.* He also maintained contact with his children in accordance with the visitation plan, secured housing, participated in a mental health evaluation, completed anger management classes, and qualified his children to receive financial assistance in the form of Social Security benefits after he became disabled. *Id.* However, K.J.G. did not complete domestic abuse counseling and his psychological evaluation revealed that he suffered from "dependent personality disorder." *Id.* at 1025. Further, there was no evidence that K.J.G. completed a parenting class. *Id.* at 1018.

We concluded that the State had not proven, by clear and convincing evidence, that it was in the best interest of the child to terminate K.J.G.'s parental

7

rights. *Id.* We reasoned that "[w]hile he was not totally successful, his efforts are indicative of his intent to maintain a parental relationship with his children." *Id.* at 1027. Moreover, his progress illustrated that "there had been an improvement in his condition and that there was a reasonable expectation for further improvement." *Id.* at 1026.

Conversely, here, J.W. has not completed any element of his case plan. The case plan mandated that he: (1) maintain safe and stable housing for six months; (2) provide the State with proof of employment; (3) complete parenting classes; (4) attend a substance abuse assessment; (5) pay $25.00 in monthly parental contributions to DCFS; (6) participate in regular visitations with B.R.C.; and (7) submit to random drug screens.

J.W. did not maintain a stable housing environment. At the time of trial, he was living with his mother in a home that did not have an adequate sleeping space for a child. When questioned by a case worker during a home inspection, J.W. stated that the home has a spare room and that they are "in the process of cleaning up and getting rid of things." The case worker attempted to inspect the room; however, J.W. and his mother refused to allow the worker to see the room.

He has not provided DCFS with proof of employment, despite his declarations that he was employed as a part time employee at Wal-Mart in Boutte, Louisiana, and later at MySpace. Further, there is no evidence in the record that J.W. paid monthly parental contributions for any month and he has only visited B.R.C. once since he entered DCFS's custody. J.W. also failed to submit to a random drug test on December 4, 2015, citing a work conflict. He was later tested on December 8, 2015. The results of the test were not available the day of trial.

8

At the time of trial, B.R.C. had been in DCFS's custody for twenty months. J.W. did not complete any element of his case plan for nineteen months. Nineteen months after B.R.C. had been in DCFS's custody and a month before trial, J.W. began attending parenting class and scheduled a substance abuse evaluation. He testified that he completed four of the nine required parenting classes as of the December 16, 2015, trial date. These last-ditch efforts are the only progress that J.W. made towards his case plan in the twenty months that preceded the termination trial. This is not sufficient to show a reasonable expectation that his conduct or condition will improve in the future.

Additionally, it is in B.R.C.'s best interest to terminate J.W.'s parental rights. Based on the testimony of Keisha Benoit, who is the child welfare specialist for this matter, B.R.C. is currently in a stable foster home with foster parents who are willing to adopt him should J.W.'s parental rights be terminated. He is also placed with his sister. Ms. Benoit noted that B.R.C. is thriving in his foster placement. Given that B.R.C. is in a stable home and doing well in his current placement, it is in his best interest to terminate J.W.'s parental rights so he can be freed for adoption.

Therefore, we find no manifest error in the trial court's judgment that DCFS proved by clear and convincing evidence that there is no reasonable expectation of significant improvement in J.W.'s condition or conduct. It is also in B.R.C.'s best interest to terminate J.W.'s parental rights.

**B. Whether the trial court erred by refusing to hear testimony and consider evidence regarding B.R.C.'s parental grandmother's interest in adopting him, if J.W.'s parental rights were terminated.**

J.W. next argues that the trial court erred when it did not allow J.W.'s mother (B.R.C.'s paternal grandmother) to testify regarding her willingness to adopt B.R.C. He cites *State ex rel. Department of Social Services v. Howard*, 03-2865 (La.App. 1 Cir. 12/30/04), 898 So.2d 443 to argue that remand is necessary when "a trial court does not permit the presentation of evidence at the hearing as to whether a ground exists for the continued custody."

DCFS maintains that the issue at trial was whether J.W.'s parental rights should be terminated. The issue was not whether the grandmother would be a suitable adoptive placement. It argues that the placement of the child is more appropriate for a "review hearing or permanency hearing at the child in need of care proceeding."

Louisiana Children's Code Article 1037(D) (emphasis added) states:

> A judgment terminating the parental rights of the parent shall grant custody of the child to the <u>department</u>, a relative who is of the age of majority and who is willing to adopt the child without an adoption subsidy, or other suitable person, in accordance with the best interest of the child.

Louisiana Children's Code Article 1037(D) does not impose an evidentiary requirement for a trial court to consider testimony at a termination hearing from persons who seek to adopt the child. Based on the trial transcript, when counsel for J.W. attempted to elicit testimony regarding the grandmother's willingness to adopt the child, counsel for DCFS objected. The trial court sustained the objection. The court noted that it was a termination proceeding and not a placement hearing. It determined that testimony regarding the grandmother's

willingness to adopt B.R.C. was irrelevant. In its judgment, the trial court terminated J.W.'s parental rights, ordered that B.R.C. shall remain in DCFS's custody, and authorized DCFS to place B.R.C. for adoption.

The trial court's ruling on the objection is bolstered by the fact that B.R.C. is currently in a stable and safe home with foster parents who are willing to adopt him. It is also noteworthy that at the time of trial, J.W. was living with his mother. If B.R.C. were placed with his paternal grandmother, it would be contrary to the court's ruling to terminate J.W.'s parental rights. It would place B.R.C. in a home setting that the court is wary of for the reasons stated above.

Further, the case cited by J.W. in his brief has no bearing on this issue. In *State ex rel. Department of Social Services*, 898 So.2d at 443, the issue was whether the State can require an alleged biological father to take a paternity test when the mother of the child was married to another man at the time of the child's birth. *Id.* The trial court denied the request for paternity testing. *Id.* The appellate court vacated the trial court's judgment and reasoned, in part, that the concept of dual paternity allowed the State to establish paternity despite the presumption that the husband of the mother of the child, who was born during the marriage, was the father of the child. *Id.*

J.W.'s citation to this case is puzzling, as that matter did not involve La.Ch.Code art. 1037(D), a termination of parental rights hearing, or a person's willingness to adopt. For the reasons stated, we find no error in the trial court's ruling to prohibit testimony from the paternal grandmother regarding her willingness to adopt B.R.C.

V.

## **CONCLUSION**

Based on the foregoing, the decision of the trial court to terminate the parental rights of J.W. is affirmed. Costs of this appeal are assessed to J.W.

**AFFIRMED.**