# NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CJ 0130

STATE OF LOUISIANA IN THE INTEREST OF M.O. AND B.O.

CONSOLIDATED WITH

2019 CJ 0131

STATE OF LOUISIANA IN THE INTEREST OF D.O. AND D.O.

Judgment rendered: **JUL 3 0 2019**

* * * * *

On Appeal from the
Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Nos. J-009885 and J-14065, Div. "I"

The Honorable Judge Zorraine Waguespack, Judge-Ad-Hoc, Presiding

* * * * *

Raveen A. Hills
Child Advocacy Program
Livingston, Louisiana

Attorney for Plaintiffs/Appellants
D.O. and D.O.

Leslie McAndrew
Assistant Public Defender
Livingston, Louisiana

Attorney for Mother/Appellee
A.O.

Mike Forbes
Assistant District Attorney
Hammond, Louisiana

Attorney for Appellee
State of Louisiana

Sherry Ann Powell
Livingston, Louisiana

Attorney for Appellee
Department of Children and Family
Services

Rebecca Lee
Assistant Public Defender
Livingston, Louisiana

Attorney for Father/Appellee
M.O.

* * * * *

**BEFORE: McDONALD, CRAIN, AND HOLDRIDGE, JJ.**

**HOLDRIDGE, J.**

This appeal is taken from a judgment that terminated the parental rights of the parents, M.O. and A.O., of their two minor children, D.O. and D.O., and certified the minor children as free and eligible for adoption.[1] For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

M.O. and A.O. are the parents of D.O., born on February 15, 2010, and D.O., born on June 18, 2014 (the minor children). On January 24, 2017, the Department of Children and Family Services for the State of Louisiana (DCFS) received a report of alleged neglect concerning the minor children.[2] It was reported that M.O. and A.O. were residing in a home that was unsafe for their minor children and that the minor children were frequently found unkempt and unsupervised. It was further reported that M.O. had previous substance abuse problems and had been incarcerated for drugs.

As a result of the report, a DCFS investigator conducted an investigation, and on January 27, 2017, questioned Laura Blackwell, the counselor where the minor children attended school. Laura stated that the "[minor] children appear[ed] ... unkempt and as if they [were] not being cared for." That same day, the DCFS investigator observed M.O. and A.O.'s home and found that it was inadequate for the minor children to reside. Roaches were observed throughout the home, as well as in the freezer, and there were holes in the bathroom wall, under the toilet, in the walls throughout the home, and in the ceiling in the children's room. The bathroom sink was clogged with dirt and grime. Due to the numerous safety

---

[1] The initials of the minor children, parents, and certain other adults will be used in this opinion to protect the privacy of the parties involved. See Uniform Rules - Courts of Appeal, Rules 5-1 and 5-2.

[2] The report of neglect included M.O.'s additional children, M.O. and B.O.; however, their custodial status is not at issue in this appeal.

2

issues, a safety plan was implemented by DCFS for the family, which required M.O. and A.O. to repair the bathroom faucet and wall, the floor around the toilet, including the living room floor, and walls where there was molded sheetrock.

The DCFS investigator returned to M.O. and A.O.'s home for observation on January 30, 2017. She reported that the bathroom wall and floor were fixed, the sink was cleaned, new sheetrock was installed in the living room, and the holes were fixed. The DCFS investigator requested that M.O. and A.O. submit to a drug screen. They submitted to drug test screenings, and both tested positive for marijuana. Therefore, the DCFS investigator requested that M.O. and A.O. submit to a substance abuse evaluation.

On February 23, 2017, the DCFS investigator observed the home again and it was found to be in disarray. There had not been any further improvements on the home since she observed it in January. The DCFS investigator gave M.O. and A.O. directives on what needed to be repaired in the home and that their case would be transferred to family services. On March 6, 2017, DCFS opened a Family Services case to assist the family, wherein the DCFS investigator and Family Services worker went to the home for observation and found that the home remained in disorder. Additional holes throughout the home were found, and the ceiling was caving into the minor children's bedroom. There was also a broken window with exposed glass. A.O. appeared to be under the influence, admitting to the case worker that she had smoked marijuana earlier that day, and smoked methamphetamines the previous night when the minor children were home. A.O. further admitted to the Family Services worker that she would test positive for adderall, methamphetamines, and marijuana if drug screened. Law enforcement was then contacted due to M.O.'s anger outburst when he arrived at the home.

M.O. admitted to the Family Services worker that he had also used methamphetamines the previous night while the minor children were home.

Consequently, DCFS sought and was issued a verbal instanter order, placing the minor children in the temporary custody of DCFS. A custody hearing was held on March 7, 2017. The minor children were drug-tested using hair samples, and both tested positive for amphetamine, methamphetamine, and marijuana. Thereafter, the trial court signed a judgment, finding that it was in the best interest of the minor children to remain in the custody of DCFS.[3]

On April 19, 2017, DCFS developed a case plan for M.O. and A.O., wherein the primary goal for the minor children was reunification and a concurrent case plan with the goal of adoption. The case plan required M.O. and A.O. to comply with the following: maintain a safe and stable home that met the needs of their family, maintain regular contact with the minor children while in foster care in accordance with the visitation plan, obtain and maintain a stable income, pay $100.00 a month to the caretakers of the minor children, submit to and comply with the recommendations of a substance abuse assessment, attend anger management classes, submit to a mental health assessment, and participate in marriage counseling. On September 5, 2017, the trial court held a case review hearing. The trial court approved the case plan submitted by DCFS, finding that it was in the minor children's best interest to remain in the custody of DCFS. The trial court further determined that the goal for the family was reunification.

DCFS developed a second case plan for the family.[4] In its plan, DCFS reported that in June of 2017, M.O. and A.O. were intoxicated during their visitation with the minor children at their home. Therefore, visitation with the

[3] DCFS placed the minor children in the temporary custody of T.O.

[4] This case plan required M.O. and A.O. to comply with the same obligations as the first case plan.

4

minor children was moved to the caretakers' home for one hour a week. DCFS further reported that M.O. and A.O. made minimal progress with their case plans. M.O. informed DCFS that he was employed; however, he had not provided check stubs to the case manager since April of 2017. DCFS further noted in its case plan that M.O. participated in substance abuse classes; however, a drug test conducted in July of 2017 revealed that he was still using methamphetamines, opiates, and marijuana.[5] DCFS noted that A.O. did not have a job, had not paid her parental contributions to the caretakers for the minor children, tested positive for methamphetamines and marijuana, and failed to comply with her substance abuse classes.[6] On December 5, 2017, the trial court held a case review hearing, wherein it ordered that the minor children remain in the custody of DCFS. The trial court further ordered that the goal for the minor children remain reunification.

On January 23, 2018, DCFS developed a third case plan for the family.[7] DCFS reported that M.O. made progress in completing his case plan by maintaining a safe and stable home, participating in substance abuse classes, and completing outpatient drug treatment, anger management classes, parenting classes, and a domestic violence program. However, M.O. tested positive for marijuana and methamphetamines in January of 2018. DCFS further reported that A.O. failed to comply with any of her case plan. A.O. was allegedly working at Waffle House; however, she did not provide DCFS with any check stubs and/or employment verification. A.O. failed to pay any parental contributions to the

---

[5] M.O. completed a substance abuse treatment in September of 2017 and an anger management program in October of 2017.

[6] DCFS reported that A.O. underwent inpatient treatment at the Serenity Center in April of 2017 for two weeks.

[7] This case plan required M.O. and A.O. to comply with the same obligations as the first case plan.

caretakers of the minor children, and failed to attend any parenting classes.[8] DCFS also reported that in October of 2017, after completing inpatient treatment, A.O. tested positive for THC[9] and tested positive for marijuana on January 8, 2018.

The trial court held a permanency review hearing on February 20, 2018. The trial court ordered that the minor children remain in the custody of DCFS and changed the goal from reunification for the minor children to adoption with a concurrent goal of reunification. Thereafter, on May 31, 2018, DCFS filed a petition for the termination of M.O. and A.O.'s parental rights of the minor children for the grounds provided in La. Ch.C. art. 1015(5) and (6). DCFS alleged in its petition that M.O. and A.O. failed to substantially comply with any of the three court-approved case plans. Specifically, DCFS alleged that A.O. failed to make any financial contributions to the caretaker of the minor children, and M.O. had not made any contributions since May of 2017. DCFS further alleged that despite participation in substance abuse treatment, M.O. and A.O. failed to demonstrate a substantive change in their addictive behaviors because they both tested positive for substances after services.[10] The petition also alleged that M.O. and A.O. failed to verify completion of mental health assessments, failed to maintain sobriety, and did not submit payment stubs evidencing that they maintained employment.

---

[8] DCFS reported that A.O. attended Anger Management classes at Denham Springs Addictive Disorders; however, the records could not be released until payment was made.

[9] We note that although A.O. tested positive for THC using a urine sample, her hair sample tested negative for all substances.

[10] On May 8, 2018, M.O. submitted to a urine screening and tested positive for THC; however, his hair screening tested negative for all substances.

On December 12, 2018, the trial court held a termination of parental rights hearing.[11] After considering the evidence submitted and testimony from multiple witnesses, including two teachers and the school counselor from the minor children's school, the caretaker for the minor children, and the case manager, the trial court ruled from the bench. The trial court found that DCFS proved by clear and convincing evidence two of the statutory grounds to terminate the parental rights of M.O. and A.O., as provided in La. Ch.C. art. 1015(5) and (6). Specifically, the trial court determined that DCFS proved that M.O. and A.O. failed to provide significant contributions to the minor children's caretaker for a period of six consecutive months and that they failed to substantially comply with their case plan by failing to maintain sobriety. Therefore, the trial court found that the termination of the parental rights of M.O. and A.O. was in the best interest of the minor children. On December 23, 2018, the trial court signed a judgment in accordance with its oral ruling. Subsequently, the minor children appealed[12] the December 23, 2018 judgment, assigning as error the following:

1. The trial court erred when it failed to grant the motion to continue made by counsel for the children and joined by counsel for the father and mother.

2. The trial court erred when it found that the State of Louisiana had proven by clear and convincing evidence that there were legal grounds for terminating the parental rights of M.O. pursuant to La. Ch. Code art. 1015(5) and La. Ch. Code art. 1015(6).

3. The trial court erred when it found that the State of Louisiana had proven by clear and convincing evidence that it was in the best interest of the minor children ... that M.O.'s parental rights be terminated.

---

[11] We note that on June 26, 2018, the trial court held a case review hearing, approving the goal as adoption for the minor children, and the matter was set for review on December 12, 2018.

[12] We note that M.O. filed an appellate brief in support of the minor children's appeal.

# APPLICABLE LAW

The permanent termination of the parent-child legal relationship is one of the most drastic actions the State can take against its citizens. **State ex rel. A.T.**, 2006-0501 (La. 7/6/06), 936 So.2d 79, 82. Parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children, warranting great deference and vigilant protection under the law. Due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship. **State ex rel L.B. v. G.B.B.**, 2002-1715 (La. 12/4/02), 831 So.2d 918, 921. However, a child has a profound interest, often at odds with those of parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term and continuous relationships found in a home with proper parental care. In balancing these interests, the interests of the child are paramount over that of the parent. **Id**.

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights and the certification of children for adoption. The grounds for which a court may involuntarily terminate the rights and privileges of a parent, as applicable to this matter, are found in paragraph (5) and (6) of article 1015 as follows:

> (5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
> * * *
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
> * * *
> (6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable

expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The method of proving the grounds set forth in La. Ch.C. art. 1015 is set forth in La. Ch.C. art. 1036(C) and (D), which provide, in pertinent part:

C. Under La. Ch.C. art. 1015(6), lack of parental compliance with a case plan may be evidenced by one or more of the following:
* * *
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
* * *
D. Under Article 1015(6), lack of any reasonable expectation of significant improvement in the parent's conduct in the near future may be evidenced by one or more of the following:

(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
* * *
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.

A two-pronged inquiry must be made in parental termination proceedings. First, the State must establish by clear and convincing evidence every element of at least one ground for termination under La. Ch.C. art. 1015. La. Ch.C. art. 1035(A); **State ex rel. L.B.**, 831 So.2d at 922. Second, but only after a ground for termination is established, the trial court must determine whether the termination is in the child's best interest. **State ex rel. L.B.**, 831 So.2d at 922; see also La. Ch.C. art. 1037(B).

9

An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. **State ex rel. K.G.**, 2002-2886 (La. 3/18/03), 841 So.2d 759, 762; **State ex rel. B.J.**, 2000-1434 (La. App. 1 Cir. 7/27/00), 767 So.2d 869, 872. Therefore, before the trial court's findings may be reversed, an appellate court must find from the record that a reasonable factual basis does not exist for the court's findings and the record establishes they are clearly wrong (manifestly erroneous). **State ex rel. A.T.**, 936 So.2d at 82-83.

## DISCUSSION

In their second assignment of error, the minor children argue that the trial court erred in determining that DCFS proved by clear and convincing evidence that there were legal grounds for terminating the parental rights of M.O. pursuant to La. Ch.C. art. 1015(5) and La. Ch.C. art. 1015(6). Specifically, the minor children argue that DCFS failed to prove that M.O. had not substantially complied with his case plan and that he had no reasonable expectation of significant improvement in the near future.

At the parental termination hearing, Suzanna Poche from DCFS testified that she was the foster care case manager assigned to this case. According to her testimony, she was assigned to this case on March 6, 2017, when DCFS obtained custody of the minor children. Suzanna testified that DCFS obtained custody of the minor children due to the parents' substance abuse problem and the parents' inability to provide adequate shelter for the minor children, as their home appeared to be in deplorable condition.

Suzanna provided testimony regarding the visitation schedule for M.O. with the minor children. She testified that initially M.O. was allowed to have overnight visitation until the minor children were not returned and law enforcement had to

10

get involved. After the trial court changed the goal for the minor children to adoption in February of 2018, the trial court ordered that visitation be held at the DCFS office. Suzanna testified that a visitation was scheduled for July 20, 2018; however, M.O. did not attend. Suzanna further testified that M.O. had not returned to the DCFS office for visitation until after the minor children were removed from a relative's home in November of 2018. Suzanna stated that she tried to contact M.O. by phone, but was unable to reach him.

Additionally, Suzanna provided testimony regarding M.O.'s failure to provide significant contributions to the caretaker of the minor children as required by his case plan. The case plan directed M.O. to make a parental contribution of $100.00 per month to the caretaker. Suzanna testified that the minor children entered DCFS custody in March of 2017, and M.O. made payments to the caretaker until May of 2017. However, M.O. failed to make any payments after May until March of 2018, when he paid $1,100.00 in arrearages. Suzanna further testified that M.O. did not make any additional payments to the caretaker since March of 2018. No party submitted any evidence to contradict the assertions of DCFS regarding this ground for termination of M.O.'s parental rights. See **State In Interest of J.J.S.**, 2014-1574 (La. App. 1 Cir. 7/7/15), 180 So.3d 319, 324.

After reviewing the record, we find no manifest error in the trial court's determination that M.O. failed to substantially comply with his case plan. The trial testimony of the case manager, as well as the numerous DCFS reports filed with the trial court over the course of these proceedings, demonstrate a lack of substantial compliance by M.O. Suzanna's testimony established that for almost two years, M.O. failed to successfully complete his case plan implemented by DCFS. One of the primary conditions that led to the minor children's removal in this case was parental substance abuse. The record reveals that M.O. tested

11

positive for drugs at the time the minor children were removed in March of 2017. Even more troubling is the fact that both of the minor children tested positive for drugs. After the minor children were removed from M.O.'s custody, he had multiple positive drug tests, despite his case plan requiring sobriety. M.O. tested positive for methamphetamines, opiates, and marijuana in July of 2017; methamphetamine and marijuana in January of 2018; and THC in May of 2018. See **State in Interest of A.L.D.**, 2018-1271 (La. 1/30/19), 263 So.3d 860, 867-68.

Accordingly, we agree with the trial court that DCFS has proven by clear and convincing evidence that M.O. failed to make a substantial effort with his case plans pursuant to La. Ch.C. art. 1015(5) and (6). Although M.O. made some efforts toward his case plan, such as completing outpatient drug treatment, anger management classes, parenting classes, and a domestic violence program, the record reveals that there was no reasonable expectation of improvement in the near future given his multiple positive drug tests. Consequently, the conditions that led to removal of the minor children have not been remedied. See **State in Interest of A.L.D.**, 263 So.3d at 867; see also **State In Interest of C.F.**, 2017-1054 (La. 12/6/17), 235 So.3d 1066, 1073. The record further reveals that M.O. failed to provide significant contributions for a period of six consecutive months for the minor children, as mandated by La. Ch.C. art. 1015(5)(b). Thus, a term that exceeds six consecutive months was established by DCFS. Therefore, we find no error in the trial court's finding that M.O. failed to substantially comply with this term of his case plan.

In their third assignment of error, the minor children argue that the trial court erred in finding that DCFS proved by clear and convincing evidence that it was in their best interest to terminate M.O.'s parental rights. A trial court may terminate parental rights only if it finds that termination is in the best interest of the child.

12

See La. Ch.C. art. 1037(B); **State in Interest of K.D.L.**, 2018-188 (La. App. 3 Cir. 10/31/18), 2018 WL 5779373 *9. This analysis requires a balancing of the child's interests and the parent's interests; however, it has been repeatedly held that the interests of the child are paramount to that of the parent. **State in the Interest of G.E.K.**, 2014-681 (La. App. 3 Cir. 1/14/15), 155 So.3d 713, 716.

Suzanna, several teachers, and the school counselor testified at the parental termination hearing regarding their interactions and observations of the minor children since they were placed in foster care by DCFS. Both of the minor children's teachers testified that they had concerns for the minor children at the beginning of the school year. However, since the minor children were placed with their new foster parent, D.V., the teachers had noticed significant positive changes in their grades, their appearance, and their behavior. The school counselor corroborated the teachers' testimony, stating that she has "seen a very big change in them" since their placement with D.V.

In further support of DCFS's position, Suzanna testified that she was assigned to this case on March 6, 2017, when the minor children were placed in the custody of DCFS. Suzanna testified that the minor children were placed with their paternal cousin, T.G., in May of 2017.[13] Suzanna further testified that DCFS received reports that the minor children went "to school dirty and [were] not doing well grade wise" after being placed with T.G. Therefore, Suzanna testified that DCFS recommended that it was in the best interest of the minor children to remain in their placement with D.V. because they needed permanency and stability.

Based on the record before this court, we find no error in the trial court's finding that it was in the minor children's best interest that M.O.'s parental rights be terminated and that they be certified as eligible for adoption. The record reveals

---

[13] The minor children were removed from T.G.'s custody and placed with D.V. in November of 2018.

13

that the minor children are thriving in their foster placement. Given that the minor children are in a stable home together and doing well in their current placement, it is in their best interest to terminate M.O.'s parental rights so that the minor children can be eligible for adoption. See **State of in Interest of B.R.C.**, 2016-0273 (La. App. 3 Cir. 12/21/16), 209 So.3d 836, 842. Accordingly, we find no manifest error in the trial court's factual finding that terminating the parental rights of M.O. is in the best interest of the minor children.[14]

## CONCLUSION

For the above reasons, the December 23, 2018 judgment of the trial court, terminating the parental rights of M.O. and A.O.,[15] and certifying the minor children, D.O. and D.O., as free and eligible for adoption, is affirmed.

**AFFIRMED.**

---

[14] The minor children's first assignment of error alleges that the trial court erred in denying their oral motion to continue, because the ad hoc judge presiding over the trial was unfamiliar with the case. A denial of a motion for continuance will not be disturbed on appeal absent a showing of an abuse of discretion by the trial court. **Davis v. European Motors**, 51,522 (La. App. 2 Cir. 8/9/17), 243 So.3d 1100, 1107. Based on the record before us, we find no abuse of the trial court's discretion in denying the motion.

[15] We note that A.O. did not appeal the instant matter. Therefore, the portion of the judgment terminating her parental rights is final. See **State in Interest of MTS**, 49,630 (La. App. 2 Cir. 1/14/15), 161 So.3d 1025, 1028 n.3; **State in Interest of BJ**, 95-1915 (La. App. 1 Cir. 4/4/96), 672 So.2d 342, 346 n.3, writ denied, 96-1036 (La. 5/31/96); 674 So.2d 264/